UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

RECEIVED
CLERK, FLORENCE, SC
2022 MAY 23 PH 2:33

ROBERT ABEL,

       Plaintiff,

CASE NO.:_____

| CIVIL COMPLAINT |

V.

FEDERAL BUREAU OF PRISONS; FNU/LNU, Director, Federal Bureau of Prisons, Washington, DC; Ian Conners, Administrator, National Inmate Appeals, Washington, DC; N.C. English, Regional Director, N.E. Regional Office, Philadelphia, PA; S. Spaulding, Warden, USP Lewisburg, PA; A. Duttry, Health Services Administrator, USP Lewisburg, PA; FNU/LNU, Clinical Director, USP Lewisburg, PA; FNU/LNU, Physican's Assistant, USP Lewisburg, PA; FNU/LNU 1 through 10, Including but not limited to Medical Personnel, Contract or BOP Employed, USP Lewisburg, PA; FNU/Waycaster, Acting Warden/Camp Administrator, FCI Williamsburg, SC; FNU/Mendosa, Associate Warden, FCI Williamsburg, SC; FNU/Wingfield, Associate Warden, FCI Williamsburg, SC; K. Nolte, Health Services Administrator, FCI Williamsburg, SC; D. Brown, Assistant Health Services Administrator, FCI Williamsburg, SC; S. Hoey, Clinical Director, FCI Williamsburg, SC; H. Harrell, Physican's Assistant, FCI Williamsburg, SC; CDR Brown, Pharmasist, FCI Williamsburg, SC; H. Borck, Registered Nurse, FCI Williamsburg, SC; M. Bunnell, Registered Nurse, FCI Williamsburg, SC; E. Ingersoll, Registered Nurse, FCI Williamsburg, SC; T. Truesdale, Registered Nurse, FCI Williamsburg, SC; FNU/LNU 1 through 10, Including but not Limited to Medical Personnel, Contract or BOP Employed, FCI Williamsburg, SC;

      Defendants. /[1]

---

[1] FNU/LNU = First Name Unknown / Last Name Unknown. These Defendant's actual names and/or positions will be identified no later than during discovery and will be served a copy of the AMENDED Complaint.

Init: RA
05/24/2022

# I.

## STATEMENT OF THE CASE

This is a multi-count Civil Action brought by federal prisoner and Plaintiff Robert Abel against the United States of America by and through the Federal Bureau of Prisons and multiple individual Defendants. The counts contained herein are based on violations the Federal Tort Claims Act (FTCA), including, but not limited to, medical negligence and malpractice; the Rehabilitation Act (RA); the Federal Bureau of Prison's (BOP) Duty of Care pursuant to 18 U.S.C. §4042, et seq.; and the Eighth Amendment's prohibition against the cruel and unusual treatment of prisoners where said treatment constitutes deliberate indifference to a serious medical need.

# II.

## JURISDICTION

Jurisdiction in this Action is grounded in 18 U.S.C. § 1346(b)(1), et seq. (FTCA); Section 504 of the RA /[2]; 18 U.S.C. §§ 4042, et seq. (The BOP's Duty of Care); and Federal Question Jurisdiction pursuant to 28 U.S.C § 1331 and Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

---

[2] At the same time and as explained infra in Section IV, exhaustion under Section 504 of the RA is non-jurisdictional.

Init: RA

05/24/2022

-2-

## III.

## VENUE

Venue in this Action is proper in that one or more of the overt acts or omissions described herein occurred within the District of South Carolina, and one or more of the Defendants named herein reside and/or work within the District of South Carolina.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has fully exhausted his administrative remedies in this matter — to the extent they are honored by federal officials and available. As it relates to Plaintiff's FTCA claims, both the Southeast & Northeast Regional offices for the BOP failed to receipt, provide a Tort Claim number, or otherwise respond to Plaintiff's Tort Claim filed with each office. Moreover, the damages amount available under the FTCA is inadequate to meet the damages demand Plaintiff seeks. Hence, Plaintiff hereby seeks a waiver of both the exhaustion requirement and the damages cap based on the BOP's flagrant misconduct in failing to receipt, assign a number, and respond to Plaintiff timely-filed Tort Claims.

As it relates to Plaintiff's RA Claim based on disability discrimination under Section 504 of the Act,

Init: RA
05/24/2022

-3-

pursuant to <u>Washington v. Federal Bureau of Prisons</u>, 2020 U.S. Dist. LEXIS 21634, *33-36 (Dist. SC, Feb. 3, 2020), Plaintiff seeks a waiver of exhaustion under §504 of the Act on the basis that any further attempts to permit the "exhaustion" of this claim would be futile. Put simply, the claim is ripe for this Court's review ¿ a formal defensive response by the Defendants.

As for Plaintiff's claims brought pursuant to 18 U.S.C. §4042 <u>et seq</u>. and <u>Bivens</u>, he has fully exhausted the BOP's Administrative Remedy Process under REMEDY ID #1030654. Plaintiff contends the Defendants will concede to full exhaustion on these claims.

## V.

## PARTIES

Robert Abel is the Plaintiff in this Action. The United States, by and through the BOP, and multiple individuals in at least two states and two separate prisons -- <u>the majority BOP medical personnel</u> -- are the Defendants in this Action.

The United States is sued officially under the FTCA, while each <u>named individual Defendant</u> is sued in <u>both</u> his or her <u>official</u> and <u>individual capacities</u>. The United States, of course, assumes liability for the acts and/or omissions of its BOP actors under the FTCA, RA, and 18 U.S.C. §4042, <u>et seq</u>., whereas each <u>named individual Defendant</u> sued

Init: RA
05/24/2022

-4-

under _Bivens_ assumes his or her own liability. All the _named individual Defendants_ are hereby sued under _Bivens_ jointly and severally in an amount not less than $100,000 each. Plaintiff seeks separate monetary damages against the United States in an amount not less than $600,000 under the FTCA, RA, and 18 U.S.C. §4042, et seq.

## VI.

### SERVICE OF PROCESS

Because the United States of America, by and through the BOP, is sued _officially_ in this Action, a copy of this Complaint must be served on the Attorney General for the United States. (_See_ Civil Rule 4(f)(i)).

As for the individual Defendants sued under _Bivens_, pursuant to Fed. Civil Rule 4(e), a copy of this Complaint must be _PERSONNALLY_ served -- _in Person_ -- on each of the following fifteen Defendants: /[3] (1) FNU/LNU, Director of the BOP, Washington, D.C.; (2) Ian Conners, National Inmate Appeals, Washington, D.C.; (3) N.C. English, Regional Director, N.E. Regional office for the BOP, Philadelphia, PA; (4) S. Spaulding, Warden, USP Lewisburg, PA; (5) A. Duttry, Health Services Administrator, USP Lewisburg, PA; (6) FNU/LNU,

---

[3] _See_ _Abel v. Harp, et al_, 122 Fed. Appx. 248, 250 (6th Cir. 2005). (holding that Service of Process on individual Defs must be effectuated personally by Marshal Service for those proceeding _in forma pauperis_) (REVERSED AND REMANDED).

Init: RA

05/24/2022

-5-

Clinical Director, USP Lewisburg, PA; (7) FNU/LNU, Physcian's Assistant, USP Lewisburg, PA; (8) FNU Mendosa, Associate Warden, FCI Williamsburg, SC; (9) FNU Wingfield, Associate Warden, FCI Williamsburg, SC; (10) FNU Waycaster, Acting Warden, FCI Williamsburg, SC; (11) K. Knolte, Health Services Administrator, FCI Williamsburg, SC; (12) D. Brown, Assistant Health Services Administrator, FCI Williamsburg, SC; (13) S. Hoey, Clinical Director, FCI Williamsburg, SC; (14) H. Harrell, Physcian's Assistant, FCI Williamsburg, SC; (15) CDR Brown, Pharmasist, FCI Williamsburg, SC; (16) H. Borek, Registered Nurse, FCI Williamsburg, SC; (17) M. Bunnell, Registered Nurse, FCI Williamsburg, SC; (18) E. Ingersoll, Registered Nurse, FCI Williamsburg, SC; (19) T. Truesdale, Registered Nurse, FCI Williamsburg, SC.

Because the imminent statutory deadline to file this Complaint is near, and because Plaintiff's access to a copy machine was hampered by his current housing in the Secured Housing Unit ("The Hole"), he has mailed and filed his ORIGINAL and ONLY draft of the instant Complaint to meet his deadline./[4]

Plaintiff assures this Court, however, that as soon as he is physically able to do so, he will contact his resources and obtain a copy of the instant Complaint

---

[4] Although he is quite sure the statutory deadline in this case would fall under the "Continuing Violation Doctrine" and not be subject to South Carolina's 2-year statute of limitations on Civil Suits, Plaintiff never was one to give a procedural defense to opposing counsel.

Init: RA

05/24/2022                    -6-

off PACER, obtain USM-285 Service-of-Process Forms from the Clerk's office, along with a standard _In Forma Pauperis Form_, and forward Copies of the Complaint attached to the USM-285 Forms, along with an executed _In Forma Pauperis Form/ Application_ to the Clerk of Court for filing & processing in Compliance with Fed.R.Civ.P. 4(i)(1) & (e).

## VII.

## FACTUAL COMPLAINT

## COUNT 1 /[5]

**VIOLATIONS OF THE FTCA (Negligence & Malpractice); THE RA (Disability Discrimination); 18 U.S.C. §4042, ET SEQ. (The BOP's Duty of Care); AND THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION THAT OCCURRED AT USP LEWISBURG, PENNSYLVANIA**

1.    Plaintiff's BOP Medical Records, be it physical (hard) copies or electronic (BEMR) /[6]/[7], show he was diagnosed as

---

[5]/ For the sake of the Defendants' response(s), requests for admissions, and other discovery, from this point forward in the Factual Complaint, Plaintiff will number each paragraph.

---

[6]/ BEMR = **B**ureau **E**lectronic **M**edical **R**ecords

---

[7]/ Plaintiff has been in official BOP Custody on and off since about 2000, when his hard medical files were created and he was diagnosed as a "glaucoma suspect" at USP/FCI Edgefield, SC. He has been in official BOP custody on the current commitment since on/about 03/29/2019, yet BOP officials assert they cannot locate his extensive medical (hard) files from 2000 through 2011. These files, which Plaintiff will compel the production of via either discovery or this Court's subpoena power, are currently being stored at the Coleman, FL, Complex-- _The Archives Center for the BOP's S.E. Region._

Init: RA
05/24/2022

-7-

a "Glaucoma Suspect" as early as 2000, during the service of a former sentence, and was officially diagnosed with Glaucoma and Cataracts in both eyes in 2019 while in official BOP custody on his current commitment.

2.    Upon intake at his first BOP facility on his current commitment, MDC Brooklyn, NY, Plaintiff was continued on his twice daily regiment of Insulin (Lantis via injection) and metFORMIN (Pills taken Orally) -- with access to a Glucometer twice daily (minimum) to closely monitor his glucose levels -- to manage his Type II Diabetes Mellitus.

3.    At the initial screening at MDC Brooklyn, Plaintiff explained to Medical Personnel that he had became a diabetic while in pretrial custody at Bridgeport Corr. Ctr., Bridgeport, CT, through excessive use of under-diluted high-fructose corn-syrup infused drink mix -- that no one on his mother or father's side of the family ever had a history of diabetes.

4.    Plaintiff further explained to MDC Brooklyn Medical Personnel that he discovered he was a Type II Diabetic following an emergency trip to a local Bridgeport Hospital when his first "finger-prick" & use of a Glucometer at Bridgeport Corr. Center revealed his glucose level in excess of 700 -- that said glucose check was done following his loss of more than THIRTY pounds and constant urinating six to eight times per hour.

5.    Plaintiff also cautioned Medical Personnel at MDC Brooklyn to NOT be misled by the "Normal" A1C

Init: RA
05/24/2022

-8-

readings on his lab reports because doctors at the hospital in Bridgeport, CT, were initially baffled by the same "normal" A1C numbers until the "source" & "cause" of his diabetes was determined -- short-term excessive use of high-fructose corn-syrup infused juice product, which they termed as causing him to be an "atypical" Type II Diabetic.

6.      Based on the information Plaintiff provided and their own observation of the A1C reading of the Lab Rep't -- which was "normal" range -- and the twice daily glucose readings compared against the backdrop of the insulin and metFORMIN Plaintiff was taking to produce those numbers, MDC Brooklyn Medical Personnel AGREED that the A1C reading on the Lab Rep't was patently unreliable.

7.      Upon arrival at his designated BOP facility on July 9, 2019 (FCI Estill, SC), and during his first consultation with the Clinical Director to discuss his Chronic-Care for Type II Diabetes Mellitus, following his explanation of the information set forth in the above paragraphs (AA's 2 through 6), the FCI Estill Medical Personnel similarly agreed that the "normal" A1C reading on Plaintiff's Lab Rep'ts was unreliable -- that closely monitoring his glucose levels via twice daily finger pricks with the Glucometer was the only way to accurately monitor Plaintiff's glucose levels, which was vitally important given his status as a Glaucoma patient subject to additional loss of vision due to unmonitored glucose levels & Hypertension.

Init. RA
05/24/2022

-9-

8.      Once in general population at FCI Estill, where he could exercise at outside recreation and diet better than while being detained in pretrial custody, Plaintiff was able to gradually reduce his insulin injections in an effort to ween himself off insulin dependence -- but not without the constant twice-daily monitoring of his glucose levels with a Glucometer and adjusting his metFORMIN intake.

9.      As his Medical Records from FCI Estill show, spanning the time period from his arrival at that facility (July 9, 2019) until only shortly before his April 15, 2020, transfer to USP Lewisburg, by exercising and dieting -- AND CLOSELY MONITORING HIS GLUCOSE LEVELS WITH A GLUCOMETER & ADJUSTING HIS METFORMIN INTAKE TO SLOWLY COMPENSATE THE REDUCTION OF INSULIN -- Plaintiff succeed in weening him- self off insulin injections almost completely.

10.      Nevertheless, and with the support of Medical Personnel at FCI Estill, Plaintiff continued to CLOSELY MONITOR HIS GLUCOSE LEVELS TWICE DAILY WITH A GLUCOMETER -- occasionally using an injection of Lantis (insulin) in response to "spikes" in his glucose levels -- until he was transferred to USP Lewisburg.

11.      On April 15, 2020, Plaintiff was transferred to USP Lewisburg, PA -- which would mark the END of his ability to closely monitor his glucose levels with a Glucometer and the beginning of an escalated but gradual permanent loss of vision, pain, mental anguish, and prolonged suffering due to the combination of Plaintiff's UNMONITORED glucose levels, high blood pressure, Glaucoma, and BOP Medical Officials'

Init: RA

05/24/2022                              -10-

repeated REFUSAL to allow Plaintiff access to a Glucometer to closely monitor and keep his glucose levels in check with occasional injections of insulin and metFORMIN. /[8]

12.    Upon Medical Intake Screening at USP Lewisburg, Plaintiff attempted to explain to Medical Personnel -- as he had at MDC Brooklyn, NY, and FCI Estill, SC, that (1) he is an "atypical" Type II Diabetic Mellitus brought about by short-term excessive use of high-fructose corn-syrup infused juice product; (2) his A1C reading on his Lab Rep'ts are, thus, NOT RELIABLE due to the particular facts surrounding his Diabetic situation; hence (3) despite the fact that he no longer takes the twice-daily injections of insulin on a regular basis, he STILL NEEDS TO CLOSELY MONITOR HIS GLUCOSE LEVELS AND HAVE ACCESS TO INSULIN TO COUNTER THE OCCASIONAL "SPIKES" IN HIS GLUCOSE LEVELS BECAUSE OF HIS STATUS AS A GLAUCOMA PATIENT WITH HIGH BLOOD PRESSURE SUCCEPTABE TO PERMANENT LOSS OF VISION DUE TO SUSTAINED SPIKES IN GLUCOSE LEFT UNTREATED.

13.    Despite being fully advised of the above information (¶ 12), USP Lewisburg Medical Personnel "scoffed" at Plaintiff and stated -- "If you're not taking daily insulin inject[-]ions, we don't allow our inmates here at USP Lewisburg to use the Glucometer, but you'll see your Physician's

---

[8] Worthy of noting is the fact that, throughout this entire 2-year "battle" with BOP Medical Personnel over his access to a Glucometer to monitor his glucose levels and avoid pain, suffering, mental anguish, and permanent loss of vision, not once did BOP officials successfully set up an evaluation by a specialist.

Init: RA

05/24/2022

-11-

<u>Assistant or the Clinical Director at some point in the near future and you can explain all this to them at that point.</u>"

14.    During his Chronic-Care Clinic at USP Lewisburg, Plaintiff explained everything surrounding his "atypical" Type II Diabetes Mellitus, high blood pressure, and Glaucoma just as set forth above (¶¶s 2 through 6 & 12). The "Physcian's Assistant," who refused to provide his name, called the "Clinical Director," who also refused to provide his name. After hearing Plaintiff out, the "Clinical Director" stated: "I hear what you're saying but, as a policy here at USP Lewisburg, unless you're on regularly-scheduled daily injections of insulin, we don't allow diabetics to check their glucose levels with a Glucometer, and I'm not so sure how elevated glucose levels in conjunction with high blood pressure might increase your loss of eye sight, but I'm gonna go with your last A1C reading." /9

15.    When Plaintiff requested a referral and consult with a specialist in Type II Diabetes, and to be given an exception to the "USP Lewisburg Policy" of not allowing all Type II Diabetics to use a Glucometer to monitor and record their glucose levels, the "Clinical Director" responded: "I'm definetely not going to allow you access to a Glucometer because at this point I'm

---

9/    Whether or not the duo who conducted the "Chronic-Care Clinic" in question were really a "Physcian's Assistant" and "Clinical Director" is still uncertain. These were simply the Titles each of the duo claimed that day. For all Plaintiff knows, he was being "examined" by the "Dentist." They certainly didn't conduct themselves as Medical Professionals.

<u>Init: RA</u>

05/24/2022

not sure you're even a diabetic, but I am going to schedule you an appointment with an Optometrist to check to see if you're really a glaucoma patient."

16. On May 28, 2022, Plaintiff filed an INFORMAL RESOLUTION ATTEMPT seeking access to a Glucometer to monitor his glucose levels, which was answered not by the Clinical Director or a doctor but, rather, the Health Services Director (HSA), A. Duttry. Once again, the HSA clearly indicated that he and his Medical Personnel were relying NOT on daily glucose levels taken with the Glucometer and RECORDED -- as they had been done by BOP Medical Personnel since Plaintiff arrived into BOP custody -- but Lab Rep'ts taken every three to six months that only show the unreliable "A1C" reading that previous doctors and BOP Medical Personnel agreed represents a misguided number due to the particularized medical facts surrounding Plaintiff's "atypical" Type II Diabetes status.

17. Shortly thereafter, Plaintiff confronted HSA Duttry at the noon meal in the dining hall in front of the Warden-- S. Spaulding. There, Plaintiff reiterated all the facts and medical information contained in the above paragraphs (¶¶s 2 through 6, 12 & 16), to which HSA Duttry responded-- "Abel, I've responded to your complaint and it's not changing ... file all the grievances you want, you will not use another Glucometer as long as you are in the custody of the BOP. When Plaintiff asked the Warden to intervene and at least schedule him a consult with a Diabetic Specialist and Ophthalmologist, he responded: "I'll do no such thing, you're

Init: RA

05/24/2022                                    -13-

looking at our specialist right here, HSA Duttry, welcome to USP Lewisburg Mr. Abel."

18.    On June 16, 2020, Plaintiff filed his formal Request for Administrative Remedy. On July 8, 2020, Warden Spaulding formally denied Plaintiff's request to access a Glucometer to manage his diabetes.

19.    On October 14, 2020, Plaintiff filed his THIRD Regional Administrative Remedy Appeal of the Warden's denial of his Request for Administrative Remedy. Each of the first two appeals had been "REJECTED" as part of the N.E. Regional Director's attempt to deter Plaintiff from successfully exhausting his Administrative Remedies -- THAT DID NOT WORK.

20.    On January 26, 2021, after Plaintiff had already been transferred to another BOP Facility in another Region, N.C. English, the Director of the N.E. Regional office, finally gave up his efforts to "derail" Plaintiff's attempts to exhaust his Administrative Remedies and, instead, switched tactics and responded to Plaintiff's Appeal as if all along Plaintiff had been seeking to possess on his person a "personal Glucometer" as opposed to what he was really seeking -- access to USE the same Glucometer used by other Diabetics at the nurse cart or "Diabetic Line", where Plaintiff had ALWAYS checked his glucose levels since his first day in BOP custody.

21.    On April 12, 2021, Plaintiff filed his Central Office Administrative Remedy Appeal of the N.E. Regional Director's Response/Denial of his Regional Appeal. In an effort

Init: RA
05/24/2022

-14-

to thwarft any future litigation in the matter, the Administrator of National Inmate Appeals, Central Office, Washington, D.C., in Conjunction with other BOP officials at the S.E. Regional Office, Atlanta, GA, and Administrative and Medical Personnel at the Federal Correctional Institution in Salters, SC, FCI Williamsburg, conspired, confederated, and agreed upon the following: (1) to respond to Plaintiff's request TO USE A GLUCOMETER TWICE DAILY AT "DIABETIC LINE" as a request for "a personal Glucometer"; (2) issue a one-time non-renewable (no Refill) order for insulin for a 45-day period; (3) issue an "Insulin Line Pass" Plaintiff had never before possessed in BOP custody; and (4) permit Plaintiff to suddenly attend "Insulin Line" to monitor his glucose levels with a Glucometer, but only for 45-days, specifically DURING the time period spanning the date the Administrator at National Inmate Appeals responded to Plaintiff's Central office Appeal-- ALL IN A CONSPIRATORIAL EFFORT TO MAKE IT "APPEAR" AS IF PLAINTIFF HAD BEEN PRESCRIBED INSULIN AND PERMITTED TO USE A GLUCOMETER ALL ALONG AND COVER-UP THE UNLAWFUL & UNCONSTITUTIONAL ACTIONS OF MEDICAL PERSONNEL AT USP LEWISBURG, PA, AND FCI WILLIAMSBURG, SC.

> THIS COMPLAINT FOLLOWS AS TO THE ALLEGATIONS & FACTS TO SUPPORT
> **COUNT 1**

Init: RA

05/24/2022                                    -15-

<u>JURY TRIAL AND MONETARY DAMAGES DEMAND</u>

22.        Plaintiff demands a jury trial on all issues so triable as it relates to Count 1, with damages against the individuals named therein -- <u>in their INDIVIDUAL CAPACITIES</u> -- under 28 U.S.C. §1331 Federal Question Jurisdiction and <u>Bivens</u>, <u>supra</u>, in an amount not less than $100,000 per Defendant, jointly and severally; and against the United States, by and through the acts and/or omissions of the BOP employees named therein, in an amount of $200,000 per violation of (1) the FTCA, (2) the RA, and (3) the BOP's Duty of Care under 18 U.S.C. § 4042, <u>et seq.</u>, for a total damages demand against the United States of not less than $600,000.

<u>ALL RIGHTS RESERVED</u>

* * *
* * *

# <u>COUNT 2</u>

<u>VIOLATIONS OF THE FTCA (Negligence & Malpractice); THE RA (Disability Discrimination); 18 U.S.C. §4042, ET SEQ. (The BOP's Duty of Care); AND THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION THAT OCCURRED AT FCI WILLIAMSBURG, SOUTH CAROLINA</u>

23.        Plaintiff arrived at FCI Williamsburg from USP Lewisburg on November 2, 2021, and was housed in Unit 3-B-UP -- The "Covid-19 Quarantine Unit." Within five business days, the Clinical Director, S. Hoey, Conducted the

<u>Init:</u> <u>RA</u>

05/24/2022

-16-

Intake Medical Screening process in the Computer room of Unit 3-B-UP. During that screening, Plaintiff provided a full detailed account of his history of Diabetes, Glaucoma, Hypertension, and how prison Medical Personnel at USP Lewisburg had denied him access to a Glucometer to manage his Diabetes, including ALL the information contained in paragraphs 2 through 6, 12 & 16 herein -- and the fact that he had a grievance (BP-10) pending in the N.E. Region on the matter. Hoey stated that he & his staff were NOT concerned with "those types of medical issues" right now -- THAT HE WOULD REVIEW PLAINTIFF's MEDICAL FILES AND SEE HIM FOR "CHRONIC-CARE" AGAIN IN 3 TO 6 MONTHS. Hoey also stated that he was ordering "Lab work" and would look at Plaintiff's "A1C" and decide whether or not he would permit him to use a Glucometer.

24.    Over the course of the next three weeks, being in the time frame of November 10th through the 30th, 2021, Plaintiff explained the entire matter surrounding the BOP's Medical Personnel at USP Lewisburg -- AND NOW FCI WILLIAMSBURG -- refusing him access to a Glucometer to monitor his glucose levels to BOTH the "Acting" Warden, Waycaster, and Associate Warden Mendosa while doing their "rounds" in the Quarantine Unit. On both occasions, the "duo" promised to "look into" it and talked big about how they both take medical issues seriously but, in the end, did nothing.

25.    In fact, during a subsequent conversation in the dining hall several months later, Mendosa went so far as to call the Assistant Health Services Administrator, D. Brown (AHSA), into the fray,

Init: RA

05/24/2022                          -17-

who told Mendosa "Abel's not even a Diabetic ... I don't know why he wants to use the Glucometer," at which point Mendosa threatened -- "That's it, get out of my face ... I'll put you in the SHU if I hear one more word out of you about a Glucometer."

26.     Over the time period spanning November 12, 2020 -- just days after his arrival at FCI Williamsburg -- through September 27, 2021 (almost a year), Plaintiff sent multiple Electronic Inmate Requests (E-Requests) to the Medical Dep't directed to various Medical Personnel, including, but not limited to, the Clinical Director, Dr. S. Hoey; Plaintiff's assigned Medical Provider, Physcian's Assistant (PA) H. Harrell; AHSA D. Brown; the Health Services Administrator (HSA), K. Nolte; and the Pharmasist, CDR Brown, begging them for proper medical treatment as it relates to his Type II Diabetes Mellitus, Glaucoma, Hypertension, and/or the combination and/or the result thereof -- ALL OF WHICH ARE, AND HAVE BEEN FOR YEARS, LISTED IN THE BOP's ELECTRONIC MEDICAL RECORDS (BEMR) AS CHRONIC-CARE CONDITIONS, ALL OF WHICH PLAINTIFF HAS POSSESSION OF EXTERNAL TO HIS PERSONAL PROPERTY. /[10]

27.     The first of the E-Requests, dated 11/27/2020, addressed to the Clinical Director, Dr. S. Hoey, and the second, dated 12/07/2020, addressed to Plaintiff's Medical Provider, PA H. Harrell, collectively explained that Plaintiff (1) was on Chronic-Care Clinic for, among other things, Glaucoma and

---

[10] Plaintiff hereby CAUTIONS the BOP, its Representatives, and all D.O.J of the consequences of RETALIATION in any form. See Abel v. Lappin, et al., 661 F. Supp. 2d 1361, 1379-82 (S.D. GA 2009).

cataracts; (2) had just been approved and scheduled for a consult with an Ophthalmologist before unexpectedly being transferred to FCI Williamsburg -- IN THE MIDDLE OF A GLOBAL COVID-19 PANDEMIC/[11] -- (3) normally is examined by an Optometrist every 60 to 90 days due to his Glaucoma but had not been examined in more than eight months; (4) had eye glasses ordered at his last consult with an Optometrist but had never received the new prescription; (5) was suffering from pain behind both eyes; and (6) was literally begging for proper medical treatment. Plaintiff never received a response to either request.

28.     The third E-Request is dated 12/08/2020, was sent to the Medical Dep't at 6:42 a.m., was directed to Plaintiff's PA, H. Harrell, and explained (1) that he was on Chronic-Care Clinic for, among other medical needs, Type II Diabetes Mellitus; (2) how and when he had become a Diabetic ( all consistent with paragraphs 2 through 6, 12 & 16 herein); (3) how he is especially vulnerable to "PERMANENT LOSS OF VISION" due to the

---

[11] Not that the Global Pandemic should excuse the Defendants or the United States of liability for any acts or omissions in this suit, and for at least two sustainable reasons: First, the BOP's Medical Personnel at both USP Lewisburg and FCI Williamsburg were so lazy they even stopped taking temperatures and, instead, sat around eating and drinking doughnuts & coffee for the better part of a year. Second, just like the courts do not recognize the pandemic as an excuse for tolling the strict 1-yr. limitations of the AEDPA, nor should the Courts allow the Pandemic to weaken the requirements of statutes' or the Eighth Amdmt.'s requirements on the BOP's Medical Personnel.

Init: RA

05/24/2022

-19-

combinination of his being a Glaucoma patient with both Diabetes & Hypertension; and (4) how he "WOULD BE INDEBTED TO [THE] FOLKS IN MEDICAL IF [THEY WOULD] CAUSE AN ORDER OR PASS TO BE ISSUED SO THAT [HE] CAN ACCESS ... (AM) [&] (PM) PILL/INSULIN LINE TO QUICKLY CHECK [HIS] GLUCOSE LEVELS." Harrell responded: "Your sugar will be monitored via lab draw. No permission for daily finger sticks is given at this time." /[12]

29.    The Fourth E-Request is dated 12/08/2020, was sent to the Medical Dep't twenty minutes behind the one discussed above (¶ 28), was also directed to PA Harrell, and further explained that Plaintiff (1) was also on Chronic-Care Clinic for Glaucoma & Cataracts in both eyes; (2) had only one consult with an Optometrist in the last eight months; (3) had never received his eyeglasses ordered at his last consult; (4) was experiencing pain behind both eyes; and (5) was requesting a review of his Medical File and an appointment. PA Harrell responded by stating the "clinical director ha[d] ... approved [Plaintiff] for an urgent eye doctor visit."

30.    At the consult the Clinical Director approved (¶ 29), the Contract "Optometrist" (Name not identified by BOP officials) told Plaintiff that, while admittedly he was not an

---

[12]/ This medically unsupported response given the detailed information before PA Harrell -- and at the root of Plaintiff being initially denied access to a GLUCOMETER at USP Lewisburg -- has its origin in plain old LAZINESS due to the four-letter word associated with it at this particular time -- WORK. At a time in BOP history where its Medical Personnel could "duck" work six hours out of eight, they simply became useless. As they generated VOLUMES of BEMR records, no one was actually "Treated."

Init: RA
05/24/2022

-20-

Ophthalmologist, he did not "think" elevated glucose levels and Hypertension, combined with Glaucoma, could result in permanent loss of vision but stated it would be "a good idea" to closely monitor Plaintiff's Diabetes. He also said he was going to recommend a Consultation with an Ophthalmologist. Of course, as of the date of the filing of this Complaint, Plaintiff has NEVER been examined by an Ophthalmologist or a Diabetic Specialist.

31.    The fifth E-Request is dated 12/14/2020, was directed to AHSA Brown, and explained that Plaintiff (1) had spoken with her that morning when he was forced to choose between waiting for his blood to be drawn for lab work or going to the Commissary -- which had been difficult to access due to the Pandemic but at the same time the ONLY means of accessing Over-the-Counter Medications -- (2) had recently sent an E-Request to PA Harrell requesting "a 'pass' or 'order' from the Clinical Director to be permitted to use the Glucometer ... to monitor [his] glucose levels"; and (3) needed to do so due to his status as an "atypical" Type II Diabetic whose "A1C levels NEVER show [him] as a diabetic."

32.    Not only did AHSA Brown fail to respond to the above E-Request (¶31), but it was precisely this request that prompted her to lie to Associate Warden Mendosa at the noon meal weeks later and tell him that Plaintiff was not a Diabetic and that she did not know why he needed access to a Glucometer. (See ¶¶s 24 & 25 herein). Every encounter with AHSA Brown ended with her stating that Plaintiff was not a Diabetic.

Init; RA
05/24/2022

-21-

33.    The sixth E-Request is dated 03/14/2021, was directed to PA H. Harrell -- Came on the heels of both Plaintiff's recent Chronic-Care Clinic with PA Harrell & Plaintiff's first Consultation at FCI Williamsburg with the Optometrist -- and explained that (1) blood and urine were collected during Plaintiff's recent Chronic-Care Clinic; (2) the samples were taken " in relation to [Plaintiff's] various Chronic-Care conditions and inclusive to [his] repeated requests and Grievance (s) ... as it relates to ... [BOP] Medical Personnel's consolidated refusals to permit [him] the use of a Glucometer to closely monitor his glucose levels"; (3) Plaintiff & PA Harrell had just had "an in-depth discussion" surrounding his Diabetes, Hypertension, elevated glucose levels, and loss of vision at his recent Chronic-Care Clinic; (4) PA Harrell had stated at that Chronic-Care Clinic that Plaintiff would soon be seen by Clinical Director Hoey regarding the use of a Glucometer; (5) Plaintiff had "made it crystal clear that [he] need[ed] to monitor [his] glucose closely -- NOT VIA QUARTERLY OR SIX-MONTH LABS, THAT [HIS] A1C IS NOT A RELIABLE INDICATOR OF WHETHER OR NOT [HIS] ... DIABETES IS UNDER CONTROL" (6) if PA Harrell will review his E-Requests, she will see that he raised these same issues very clearly in E-Requests within 30 days of his arrival at FCI Williamsburg; (7) his attorney's frequent requests for his medical files was not "for her health -- it was for [his]"; and (8)"it is prudent that [Medical Personnel] EXPEDITE their decision to either GRANT or DENY [his] requests to use the Glucometer ... to pre[-]

Init: RA
05/24/2022

-22-

vent additional loss of vision." PA Harrell NEVER provided a written response to this E-Request, and for good reason. (Ref. ¶ 36 below).

34.    The seventh E-Request is dated 03/28/2021, was directed to PA H. Harrell, explained that (1) Plaintiff was experiencing itching and pain in both eyes; (2) he was "requesting another consultation with the Optometrist on his next visit"; (3) he was reminding her that "its been almost ONE YEAR now that the BOP... ha[s] denied [him] access to a Glucometer to monitor [his] glucose levels"; (4) he has "explained until [he's] BLUE IN THE FACE that the A1C reading on [his] lab work is NOT a reliable indicator of how [his] diabetes is being managed"; and (5) he was requesting her to "REVIEW ALL [HIS] LABS since coming back into BOP custody ... and [she] will conclude that, even before [he] was able to 'wean' [him]self off insulin ... [his] [his] A1C WAS NOT EVEN 'Pre-Diabetic'." He asked PA Harrell: "Doesn't this register with you people?" Again, PA Harrell declined to respond in writing./[13]

35.    The eighth E-Request is dated 03/30/2021, was directed to PA Harrell, and explained how the combination of his unmanaged Diabetes and "gov. boots" was destroying his feet -- that "both feet [were] hurting so bad that [he'd] scratched the skin off them in places," and that he "need[ed] some medication for the calluses & sores, and ... some Diabetic

---

[13]/ It's all about deniability for BOP officials. If they don't respond to E-Requests, they lie and say they did not receive the request -- which is technically IMPOSSIBLE. If they did respond and get "caught-up" in the mix, they lie and blame someone else for the response.

Init: RA

05/24/2022

shoes." PA Harrell NEVER to this E-Request either. As Plaintiff's medical records show, however, it was TWO MONTHS later, on 06/04/2021, during a "Follow up Visit," when PA Harrell finally saw Plaintiff's mangled feet and -- "based off being prescribed sliding scale insulin," which was part and partial to the conspiratorial cover-up discussed below (¶ 36, (A)(B)&(C))-- finally gave him a pair of Medical (soft) shoes.

36.   The reason PA Harrell and other Medical Personnel at FCI Williamsburg were reluctant, almost to the point of guilt, to RESPOND to Plaintiff's repeated cries & pleas for medical attention can be summed up in three Subsections:

(A)   A review of Plaintiff's BEMR shows that, although scant against the backdrop of all his E-Requests and in-person discussions (and arguments) with various Administrative and Medical Personnel at FCI Williamsburg, TWO ENTRIES were made in those records relative to his "quest" to be permitted to manage his Diabetes by use of a Glucometer as opposed to depending on the wholly UNRELIABLE A1C reading on Lab Rep'ts -- YET NOTHING WAS DONE TO PERMIT THAT WITH THE EXCEPTION OF THE 45-DAY ORDER (NON-RENEWABLE) FOR SLIDING-SCALE INSULIN & ACCESS TO A GLUCOMETER FOR THE SAME 45-DAY PERIOD, ALL DONE SPANNING THE TIME PERIOD OF THE JUNE 22, 2021, RESPONSE/DENIAL OF PLAINTIFF'S CENTRAL OFFICE ADMINISTRATIVE APPEAL IN AN EFFORT TO "DUPE" ANY FUTURE REVIEWERS, JUDICIAL OR OTHERWISE, INTO BELIEVING PLAINTIFF HAD ACCESS TO A GUCOMETER AND INSULIN ALL ALONG. Those entries, both pre-dating the

Init: RA

05/24/2022                            -24-

06/22/2021 Response/Denial of Plaintiff's Admistrative Remedy Appeal at Central Office for the BOP, were as follows: 12/18/2020, entered by Christopher Davis, APRN-FNP-C; and 03/11/2021, entered by PA H. Harrell. The _first_, by Davis, stated, in pertinent part -- (12/18/2020 Med. Record)(Pg. 1 of 1)

> [Plaintiff's] unit is locked down and [he was] not able to come to medical. Will reschedule visit. Wants to discuss DM [Diabetes Management] and whether or not he can check FSBS [Finger Stick Blood Sugar] daily[.] A1C in copia from last yr was great (less than 5.7)[.]
>
> Schedule:
>
> | Activity | Date Scheduled | Scheduled Provider |
> |---|---|---|
> | Clinical Encounter | 01/19/2021 00:00 | MLP 02 /[14] |
>
> wants to check fsbs [finger stick blood sugar] daily, likely does not need unless significant change from 2019[.]

Clearly, Davis was relying on the A1C reading from Lab Repts -- _which is exactly WHY the FSBS checks with a Glucometer are needed_. The _Second_, by PA Harrell stated, in pertinent part -- (03/11/2021 Med. Record)(Pg. 1 of 2)

> Chief Complaint: DIABETIC
> Subjective: Inmate was seen for request to be able to check his blood sugars a few times a week. He states back in 2018 his blood sugars were 700-800s. He states that his A1C has always been normal though. He refused labwork recently to be able to go to commissary.
>
> PLAN:
> New Laboratory Requests:
>
> | Details | Frequency | Due Date |
> |---|---|---|
> | Lab Tests-H-Hemoglobin A1C | One Time | 03/11/2021 |

---

[14]/ MLP-02 is _NOT_ Christopher Davis, who was _not_ Plaintiff's Medical Provider. In fact, Plantiff has never met Christopher Davis. Hence, the 01/19/2021 "Clinical Encounter" was a total fabrication. It never happened, and it does not appear on BEMR.

Init: RA

05/24/2022

-25-

(03/11/2021 Med Records)(Pg. 2 of 2)

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Follow-up | 04/12/2021 00:00 | MLP 02 |

review labs; does he need BS checks daily? /[15]
recheck BP

These two entries by Davis & PA Harrell are but a "snapshot" of the GROSS NEGLIGENCE and deliberate indifference to Plaintiff's need to receive meaningful medical assistance in an effort to properly manage his Diabetes & his "quest" to access a Glucometer. Rather than turn the matter over to a Diabetic specialist, coupled with a consult with an Ophthalmologist, they did nothing -- BUT CONSPIRE, CONFEDERATE, AND AGREE TO WORK WITH THE REGIONAL DIRECTOR AND IAN CONNER, NATIONAL INMATE APPEALS, CENTRAL OFFICE, WASHINGTON, DC, TO COVER-UP THE MORE THAN ONE YEAR PLAINTIFF SUFFERED & LOST A PERCENTAGE OF HIS VISION AS HIS BLOOD SUGAR SPIKED WITHOUT PROPER MANAGEMENT BY BOP MEDICAL PERSONNEL, WHICH TURNS US TO THE NEXT SUBSECTION.

(B)    On 05/26/2021, Plaintiff responded to his name being on that morning's "Electronic Callout" to pick up his monthly supply of "keep-on-person" (KOP) meds by going to Pill-Line to pick them up. After handing Plaintiff his bag full of meds, the Medication Technician -- who had scanned Plaintiff's BOP

---

[15]/    BS = Blood Sugar; BP = Blood Pressure. Once again, this "scheduled" Date for a follow-up never happened. The BEMR proves there was never a follow-up.

Init: RA

05/24/2022                                    -26-

Identification Card to pull-up his Med. Order -- Patresa Singletary, said: "Wait a minute Mr. Abel, there's an Order here for Insulin and you to check your blood sugar," at which time a white male Plaintiff had never delt with came to the Pick-up window, pushed the Glucometer, a blood strip, and a brand new "Insulin-Line Pass" through the window and told Plaintiff to check his blood sugar and come to the Am & Pm Pill/Insulin line to check it. Plaintiff asked who authorized all this and when the Order for Insulin was issued, to which the white male -- <u>Possibly CDR Brown, the Pharmasist; or Christopher Davis, APRN-FNP-C</u> -- stated he was not sure, then asked: "No one in Medical told you?" At that point, the Med. Tech., Singletary, rolled her eyes and shook her head. Plaintiff checked his blood sugar and left. That same morning, following the above-described encounter, Plaintiff directed a <u>COMPREHENSIVE</u> E-Request to AHSA D. Brown, where he first described the above encounter -- <u>THEN REMINDED HER THAT JUST TEN MINUTES LATER, WHILE AWAITING HIS 8:30 AM DENTAL CALL-OUT, HE HAD SPOKEN WITH HER IN MEDICAL, EXPLAINED ALL OF HIS HISTORY OF DIABETES & HIS "QUEST" TO ACCESS A GLUCOMETER & INSULIN--</u> and asked her to answer two simple questions: (1) "<u>WHEN</u> was [he] authorized to use a [G]lucometer here at FCI Williamsburg, and (2) <u>WHY</u> didn't someone in medical notify [him] of [it]?" AHSA D. Brown <u>NEVER</u> responded. With no other Administrative staff to turn to, and no actual Warden over the Institution, Plaintiff Sought answers to

<u>Init: RA</u>
05/24/2022                    -27-

the above questions through Associate Warden Wingfield, who was "Acting Warden." Wingfield REFUSED to even fully hear Plaintiff out on the matter and stated that "Diabetes isn't even a life-threatening medical issue ... if and when you're dying I'll intervene." When Plaintiff tried to explain that he was slowly losing vision in both eyes due to the combination of Hypertension, his unmanaged Diabetes, and Glaucoma, Wingfield responded: "So, now you're a doctor?" Toward the end of June, 2021, during one of Plaintiff's Am blood sugar checks, Med. Tech. Singletary, who had heard Plaintiff out on his particular Diabetic issues and his "quest" to be permitted access to a Glucometer and Insulin, revealed two daunting facts to Plaintiff: (1) The Order for Insulin & access to a Glucometer was only for 45 days and because of "Washington's Central Office," and (2) Someone in medical had been changing the numbers that were put into BEMR that showed Plaintiff's "spiked" blood sugars in the Am — THAT ALL BUT ONE OF THE AM NUMBERS THAT WAS 250 OR GREATER HAD BEEN REPLACED WITH LOWER NUMBERS. Then, on 07/03/2021, Nurse T. Truesdale told Plaintiff to "hand over [his] Insulin-Line Pass," that he was "done" and to not come back to Insulin Line or she would have him placed in the "hole." Following the rude encounter with Nurse Truesdale, Plaintiff attempted to check his glucose levels at Pill ("Insulin") Line several times. Nurses Ingersoll, Borck, and Bunnell all three REFUSED to permit him to do so and, on at least two occasions, sent him to the

Init: RA
05/24/2022

-28-

Lieutenant's office in an effort to have him placed in the "hole." On both occasions, Plaintiff's explanation to the Compound officer was sufficient to avoid segregation, but he was warned that any more attempts to use the Glucometer without an authorized "Insulin-Line Pass" -- which Nurse Truesdale had confiscated from Plaintiff on 07/03/2021 -- would result in him receiving an INCIDENT REPORT for being in an "unauthorized" area and he would be placed in the "hole."

(c)     About four weeks after Nurse Truesdale rudely snatched Plaintiff's "Insulin-Line Pass" from him and told him not to report to Insulin Line again, Plaintiff received the June 22, 2021, Response/Denial from Ian Conners, Administrator of National Inmate Appeals, Central Office, Washington, D.C. It became CRYSTAL CLEAR at that point that a conspiracy had taken place, as Conners cleverly made it "appear" entire Grievance surrounded his demands for a "personal Glucometer" and that, upon "[F]urther review reveals that [at the time of his Response, 06/22/2021] [Plaintiff was] on sliding-scale insulin via pill line twice a day and [his] blood sugar level [was] being monitored at pill line and documented daily" -- THAT IS, UNTIL 07/03/2022, THE DAY NURSE TRUESDALE RECEIVED INSTRUCTIONS TO REVOKE & CONFISCATE PLAINTIFF's "INSULIN-LINE PASS, EXACTLY ELEVEN DAYS AFTER IAN CONNERS' RESPONSE WAS ISSUED. However, and as Plaintiff will show to this Court, and the Jury that hears the Case, the BOP's own BEMR will show EXACTLY when Plaintiff started & ended daily FSBS (Finger-Stick Blood-Sugar) Checks at MDC Brooklyn, NY, and FCI

Init: BA
05/24/2022                    -29-

Estill, SC. Then, he will show that, while at USP Lewisburg, from April 16, 2020, through Nov. 1, 2020, NOT ONCE was FSBS readings taken or recorded./[16] Finally, Plaintiff will show that, while housed at FCI Williamsburg from November 2, 2020, through to the date on the last page of this Complaint (more than 18 months), his Blood Sugar readings were only recorded 45 times -- specifically during the time period spanning Ian Conners' June 22, 2021, Response to Plaintiff's Central Office Administrative Remedy Appeal & specifically to mislead and be able to fabricate a FALSE & MISLEADING Response.

It should also be noted that, consistent with how Plaintiff explained he discovered prison officials had arranged for the one-time, non-renewable ORDER for Insulin & twice-daily FSBS checks (see ¶ 36(B) at pp. 26-27 herein), since he only discovered he was able to use the Glucometer on May 26, 2021, the entries on the "Bureau of Prisons Health Services Blood Glucose" sheet for May 21, 2021, through May 25, 2021 were FABRICATED. Put simply, the 45-days of FSBS checks done at FCI Williamsburg were all part of not a "Good-Faith Effort" to assist Plaintiff in the management of his Diabetes but in a BAD-FAITH CONSPIRATORIAL EFFORT to cover-up all the previous violations of the FTCA, RA, Title 18 U.S.C. §4042, et seq. and the Eight Amendment of the United States Constitution -- which forms the basis of COUNT 3.

---

[16] Blood Glucose readings are recorded Electronically in the BEMR on a specific Window/Chart, AM & PM, Titled "Bureau of Prisons Health Services Blood Glucose."

Init: RA

05/24/2022

## JURY TRIAL AND MONETARY DAMAGES DEMANDS

37.     Plaintiff demands a jury trial on all issues so triable as it relates to Count 2, with damages against all the individuals named therein -- in their INDIVIDUAL CAPACITIES -- under 28 U.S.C. §1331 Federal Question Jurisdiction and Bivens, supra, in an amount not less than $100,000 per Defendant, jointly and severally; and against the United States, by and through the acts and/or omissions of the BOP employees named therein, in an amount of $200,000 per violation of (1) the FTCA, (2) the RA, and (3) the BOP's Duty of Care under 18 U.S.C. $4042 et seq., for a total damages demand against the United States of not less than $600,000.

ALL RIGHTS RESERVED

* ※ *
* ＊ *

# COUNT 3

## CONSPIRACY TO VIOLATE --

THE FTCA, RA, 18 U.S.C. $4042, ET SEQ., AND THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION THAT OCCURRED WHILE PLAINTIFF WAS HOUSED AT FCI WILLIAMSBURG SOUTH CAROLINA

※ PARAGRAPH OF INCORPORATION BY REFERENCE ※

38.     For the sake of brevity and to avoid repetative facts,

Init: RA
05/24/2022

-31-

with the exception of paragraph 22, Plaintiff hereby incorporates into Count 3 of this Complaint all of the numbered paragraphs from Count 1, specifically paragraphs 1 through 21; and, with the exception of paragraph 37, all of the numbered paragraphs from Count 2, specifically paragraphs 23 through 36, by reference as if they were rewritten herein paragraph 38 of Count 3.

39.        In addition to the E-Requests discussed in Count 2, Plaintiff sent two additional E-Requests to PA Harrell. In the first, dated 06/17/2021, Plaintiff reminded PA Harrell that he was behind schedule for his 90-day consults with the Optometrist, as well as the fact that, during his March 2021 consult with the Optometrist, he said he was going to schedule a consult with an Ophthalmologist. In her response, PA Harrell stated that Plaintiff was pending a follow-up from his March 2021 consultation with the Optometrist, but she does not see a consult for an Ophthalmologist in BEMR but she would make inquiries. This is interesting because, at page 4 of 5 of the 11/03/2020 Initial Intake Screening conducted by Dr. Hoey in Plaintiff's housing unit, it clearly shows under the heading "Discontinued Consultation Requests" where, just prior to being transferred from USP Lewisburg to FCI Williamsburg, Plaintiff had a consultation scheduled with an Ophthalmologist that was probably & specifically cancelled because of Plaintiff's 11/02/2020 transfer to FCI Williamsburg.

Init: RA

05/24/2022

-32-

Rather than making arrangements to reschedule a Consult Request, PA Harrell opted to do NOTHING but allow the Conspiratorial 45-day FSBS-check scam to play out, and also allowed Plaintiff's medical needs to go unattended. This omission by PA Harrell is especially heinous in the face of why the previous Consult with an Ophthalmologist had been scheduled in the first place-- "his cataracts and glaucoma." The second E-Request, dated 09/27/2021, is where Plaintiff made it crystal clear that he knew Central Office had set up the 45-day FSBS checks to falsify its response to his Grievance; where he complained of feeling weak in the mornings; and where he requested that she "schedule a meeting with the HSA, Clinical ... and Medical Director," and BEGGED for proper medical treatment. PA Harrell responded: "This will have to be cleared by the clinical director, but we can discuss [it] at your next scheduled call out appointment. Howeve, as Plaintiff's Medical Records show, he was never consulted by an Ophthalmologist up to and including the date of this Complaint. To be sure, during his thirty-eight months in BOP Custody since March 29, 2019, Plaintiff has never had a consultation with a specialist in Type II Diabetes, Cataracts, or Ophthalmology.

40.     Plaintiff sent two other E-Requests relevant to his Claims of violations of the FTCA, RA, 18 U.S.C. §4042, et seq., and the Eighth Amendment & conspiracy to COVER-up those violations. The first E-Request, dated 07/01/2021,

Init: RA
05/24/2022

-33-

was directed to HSA K. Nolte, where Plaintiff explained that (1) the HSA should pull up his 05/20/2021 E-Request " to AHSA Brown and review it"; (2) he had been "COMPLETELY denied access to a [G]lucometer to monitor [his] Type Two Diabetes" and had also been denied Insulin; (3) no one at FCI Williamsburg will tell him "when, exactly, Washington, DC, told [FCI Williamsburg Prison/Medical Personnel] to permit [him] the use of the [G]lucometer; and (4) he wanted the HSA to "go back in [all his] Electronic Requests and review them very closely," that he also has "[G]laucoma & [C]ataracts," and if she will just "look at [his] [G]lucose numbers since [he has] been using the Glucometer [during the 45-day period in May, June, and July, 2021, she will see] they are anything but consistent." The HSA never responded this E-Request and never even attempted to schedule a meeting to discuss, treat, or assist in the management of Plaintiff's Type II Diabetes, Glaucoma, and Cataracts.

41.    The second and final E-Request mentioned above (¶ 40) is dated 07/15/2021, was directed to the Chief Pharmasist, and simply asked: " I was told that my use of the Glucometer was only temporary and the ORDER for it was for 60 days. Is this true, and why? Like the other Medical Personnel, the Pharmasist also opted NOT to respond to this E-Request.

42.    Plaintiff was finally able to speak with the "Acting Warden / Camp Administrator, FNU/ Waycaster, who

listened to the entire chain of events from April 16, 2020, through and including the 45-day FSBS check, including how Medical officials had issued and then confiscated his "Insulin-Line Pass," and how NONE of the Medical Personnel would talk about it, respond to his E-Requests, or assist him to monitor, manage, and treat his Type II Diabetes, Glaucoma, and Cataracts. Mr. Waycaster called HSA K. Nolte over to where he was standing & answering questions of Inmates at the noon meal. He spoke with HSA K. Nolte for approximately ten minutes, then told Plaintiff that "it was bigger than HSA Nolte and her staff... she's just following orders from the top ... you [meaning Plaintiff] must have pissed someone off ...." FNU/Waycaster refused to assist Plaintiff any further.

42.      Hence, it is clear that the Director of the BOP and/or Ian Conners, the Director's Administrator of National Inmate Appeals, in conjunction with HSA K. Nolte; AHSA D. Brown; Clinical Director S. Hoey; Pharmasist CDR Brown; PA Harrell; and Registered Nurses H. Borck, M. Bunnell, E. Ingersoll, and T. Truesdale; and others unknown, conspired, confederated, and agreed to set up, schedule, or otherwise orchestrate the 45-day FSBS check, including the issuance and later Confiscation of an official "Insulin-Line Pass," and the addition & falsification of numbers recorded on the "Bureau of Prisons Health Services Blood Glucose" sheet,

Init. RA

05/24/2022                                  -35-

where Plaintiff's blood glucose readings (Am & Pm) from 05/21/2021 through 07/03/2021 were supposed to be accurately recorded, all done in a conspiratorial effort to falsely document and create a substantially misleading & false Response to Plaintiff's Central Office Administrative Remedy Appeal, said response prepared and signed on June 22, 2021, by Ian Conners. Said Response intentionally & maliciously made it "appear" as if Plaintiff's underlying Grievance was to possess a "personal Glucometer" -- which was false and misleading -- and made it "appear" as if Plaintiff had all along been on a "sliding-Scale" regiment of Insulin and that his blood glucose had been "monitored" and "recorded" all along -- <u>WHEN IN FACT THAT, PRIOR TO THE 45-DAY FSBS SCAM BEING ORCHESTRATED BEGINNING MAY 21, 2021, PIAINTIFF HAD BEEN COMPLETELY DENIED ACCESS TO A GLUCOMETER & INSULIN SINCE APRIL 16, 2020.</u>

## JURY TRIAL AND MONETARY DAMAGES DEMANDS

43.     Plaintiff demands a jury trial on all issues so triable as it relates to Count 3, with damages against all the individuals named therein -- in their INDIVIDUAL CAPACITIES -- under 28 U.S.C. § 1331 Federal Question Jurisdiction and Bivens, supra, in an amount not less than $100,000 per Defendant, jointly and severally; and against the United States, by and through the acts and/or omissions of the BOP Employees named therein, in an amount of

Init: RA
05/24/2022

-36-

$200,000 per violation of Conspiracy to violate (1) the FTCA, (2) the RA, and (3) the BOP's Duty of Care under 18 U.S.C. §4042 et seq., for a total damages demand against the United States of not less than $600,000.

ALL RIGHTS RESERVED

* * *
* * *

## COMPLAINT SWORN UNDER OATH

I, Robert Abel, pursuant to 28 U.S.C. §1746, hereby swear under oath and subject to penalty of perjury that the foregoing complaint and all facts & claims therein are true and correct.

Respectfully submitted,

Robert Abel

Sworn to & Mailed on 05/24/2022

Robert Abel
Fed. Reg. No. 41724-061
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

Init: RA
05/24/2022

-37-

## CERTIFICATE OF FILING AND NON-COMPLIANCE WITH SERVICE

I, Robert Abel, hereby CERTIFY that the foregoing Complaint was tendered to prison officials for the purpose of FILING under Houston v. Lack, ___ U.S. ___ (197__) this 24th day of May, 2022, with the accurate address of the Clerk of Court, U.S. District Court, Florence Division, and adequate postage appended thereto.

I, Robert Abel, also hereby CERTIFY that, consistent with Section VI. of this Complaint (SERVICE OF PROCESS)(pp. 5-7 herein) and the seperate pleading included herewith this Complaint to be filed Contemporaneously therewith (See MOTION TO HOLD SERVICE OF PROCESS IN ABEYANCE PENDING TRANSFER & FILING OF MOTION TO PROCEED IN FORMA PAUPERIS), he was physically unable to access Copies and an In Forma Pauperis Motion or Application before the Statutory Deadline due to his being in the Secured Housing Unit and, hence, has NOT Served the United States, Federal Bureau of Prisons, or any of the Individual Defendants.

Mailed

Robert Abel        05/24/2022
Robert Abel

Init: RA

05/24/2022