UNITED STATES DISTRICT COURT RECEIVED
DISTRICT OF SOUTH CAROLINSBC CLERK. COLUMBIA. SC

2022 JUN 29  PM 12: 07

ROBERT ABEL,

      Plaintiff,

CIVIL No.:

1:22-1630-TMC-SVH

V.

K. NOLTE, Health Services Coordinator; D. BROWN,
Assistant Health Services Coordinator; STEPHEN HOEY,
Clinical Director; RAYMOND DOMINICI, Medical Director;
HOLLY HARRELL, Physcian's Assistant; CDR BROWN, Pharmacist;
H. BORCK, Registerd Nurse, E. INGERSOLL, Registered Nurse;
M. BUNNELL, Registered Nurse; and T. TRUESDALE, Registered
Nurse, all current or former employees, Federal Correctional
Institution, FCI Williamsburg, Salters, South Carolina;

      Defendants.



# FIRST
# AMENDED COMPLAINT

DATE: June 23, 2022

RA

�direcTo Because Plaintiff anticipates this pleading arriving
to be docketed <u>out-of-time</u> despite being handed to
prison officials for mailing on June 23, 2022, he
hereby invokes The "Mailbox Rule". <u>See Houston v. Lack</u>,
487 U.S. 266 (1988).

-1-

# I.

## STATEMENT OF THE CASE

This is a Civil Action brought against multiple Federal Bureau of Prisons (BOP) Medical Officials in their INDIVIDUAL CAPACITIES based on their individual and/or consolidated acts and/or omissions which denied Plaintiff of access to a Glucometer to closely monitor his Atypical Type II Diabetes Mellitus, as well as access to Insulin to reduce "spikes" of glucose in conjunction with his oral METformin. Said acts and/or omissions over the course of 17 months or more have resulted pain, suffering, mental anguish, a percentage of permanent loss of bilateral eye sight, other bilateral eye damage, and Polyneuropathy -- and constitutes medical deliberate indifference.

# II.

## JURISDICTION

Subject-Matter:

Subject-matter jurisdiction in this Action is grounded in 28 U.S.C.§ 1331 and Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Personal:

Personal jurisdiction in this Action is grounded in the fact that, at all times relevant, the Defendants were engaged in "business" as employees for the BOP in the District of South Carolina.

Init.: RA 06/23/22

-2-

## III.

### VENUE

Venue in this Action is proper in that, at all times relevent, all of the Defendants named in this Amended Complaint worked and/or resided in the District of South Carolina.

## IV.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has fully exhausted his Administrative Remedies as to all claims set forth in this Amended Complaint. (See REMEDY ID NO. 1030654).

## V.

### PARTIES

Robert Abel is the Plaintiff in this Action. The Defendants, all clearly identified on the Cover page and throughout pages 4 through 13 herein, are either current or former BOP Medical Officials and are sued in their INDIVIDUAL CAPACITIES for acts and/or omissions that occurred during the execution of their duties and under color of federal law while working at FCI Williamsburg, County of Williamsburg, City of Salters, South Carolina, as described in this Amended Complaint. (See Section VII, Factual Background & Claims Against the Defendants).

Init: RA   06/23/22                    -3-

## VI.

## SERVICE OF PROCESS

Because Plaintiff will be proceeding In Forma Pauperis, service-of-process will be effectuated by the Clerk of Court & U.S. Marshal Service. Plaintiff has provided a Summons & USM-285 Form for each Defendant; the U.S. Attorney for the District of South Carolina, Columbia Division; and the Attorney General for the United States.

Plaintiff avers that the U.S. Attorney & Attorney General may be served by U.S. Mail. However, absent a waiver of personal service, each individual Defendant MUST be served IN PERSON. See Abel v. Harp, et al., 122 Fed. Appx. 248, 250 (6th Cir. 2005).

## VII.

## FACTUAL COMPLAINT

Factual Background & Claims Against the Defendants:

1. Plaintiff's BOP Medical Records, be it hard copies or Bureau Electronic Medical Records (BEMR), show that he has been diagnosed with the following medical conditions: (1) Type II Diabetes Mellitus, (2) Glaucoma, (3) Cataracts, (4) Primary Hypertension, (5) Hyperlipidemia, and (6) Polyneuropathy.

Init.: RA  06/23/22                    -4-

2.    Plaintiff entered the BOP on/about March 30, 2019, at the Metropolitan Detention Center, Brooklyn, NY (MDC Brooklyn), and was continued on a twice daily injection of Insulin (Lantis) and METformin (oral), along with AM & PM fingerpricks to check his Glucose Level with a Glucometer, all part of his management of Type II Diabetes.

3.    At intake and during later screening at MDC Brooklyn, Plaintiff explained that he had just became a Diabetic in 2018 while in pretrial custody through excessive use of underdiluted high-fructose corn-syrup infused juice product—as no one else in his family had a history of Diabetes.

4.    Plaintiff further explained that he had discovered he was a Diabetic following his first "finger prick" and use of a Glucometer at the Bridgeport Correctional Center (Bridgeport CC), Bridgeport, CT, which revealed a glucose reading of 700+ and his being rushed to the emergency room at a local hospital, where doctors were initially baffled by the "normal" AIC reading on Plaintiff's Lab Report while his glucose reading with the Glucometer showed a glucose level still above 500. This defied him being a "typical" Type II Diabetic.

5.    After becoming aware of Plaintiff and other kitchen workers at Bridgeport CC using the severely underdiluted high-fructose corn-syrup infused juice product, doctors determined that Plaintiff had damaged his pancreas and cautioned him that, in his case, he was considered an "Atypical" Type II Diabetic

Init.: RA   06/23/22

and could _never_ rely on his A1C reading as an accurate indicator of the status of his Diabetes -- _to always rely on the reading from his Am & Pm finger pricks with the Glucometer to manage his Type II Diabetes._

6.     Based on the above explanation (AfF's 3-5), MDC Brooklyn Medical Staff __AGREED__ that the "normal" A1C reading they were looking at on Plaintiff's recent Lab Report was _false, misleading,_ and _unreliable_ and cautioned him on the importance of attending Am & PM Diabetic Line to closely monitor his glucose levels and manage his Diabetes -- _critical considering his Glaucoma & Hypertension._

7.     Upon arrival at his designated BOP Facility on/about July 2019, the Federal Correctional Institution, Estill, SC (FCI Estill), Plaintiff explained the same facts as set forth above (AfF's 3-6) to the FCI Estill Medical Staff who, upon review of Plaintiff's first A1C reading on the Lab Report ordered at that facility against his recent glucose readings & Insulin intake, also __AGREED__ that the "normal" A1C reading they were looking at was _false, misleading,_ and _unreliable,_ and __ALSO__ cautioned Plaintiff on the importance of attending AM & PM Diabetic Line to closely monitor his glucose levels and manage his Diabetes -- _Critical to the health of his eyes with Glaucoma._

8.     While housed at FCI Estill, through better dieting and exercise, Plaintiff was able to reduce his Insulin intake down to only an occassional injection when his Glucometer reading showed "spikes" in glucose

Init.: RA   06/23/22

-6-

levels -- something ONLY detectable through access to AM & PM glucose checks, NOT THE "OCCASSIONAL" LAB REPORT with the MISLEADING & UNRELIABLE A1C READING.

9.    Despite Plaintiff's own efforts to reduce his Insulin intake, FCI Estill Medical Staff still stressed that Plaintiff should closely monitor his glucose levels at AM & PM Diabetic Line, take his occasional injection of Insulin when the "spikes" in glucose levels occur, and continue his diet & exercise routine -- to ensure his overall health & eyesight due to Glaucoma.

10.    However, the Global COVID-19 Pandemic, and then April 13, 2020, Tornado that destroyed the FCI Estill prison Compound, changed everything. The Pandemic triggered a Nationwide Prison Lockdown, and the April 13, 2020, Tornado triggered Plaintiff's transfer to another prison where, for the next six and a half months, Plaintiff could not properly exercise while on "LOCKDOWN" -- and where he began the complete loss of control to manage his Diabetes & Glaucoma.

11.    On November 2, 2020, Plaintiff was transferred to the Federal Correctional Institution in Salters, SC -- FCI Williamsburg--where Medical Personnel continued to IGNORE his repeated written, verbal, and electronic pleas to be permitted use of a Glucometer to properly monitor & manage his Diabetes, and access to Insulin to reduce glucose "spikes."

Init.: RA   06/23/22          -7-

12.    During his first encounter with Clinical Director Hoey (CD Hoey, Hoey, or Defendant Hoey), Plaintiff explained the above detailed facts contained in ¶¶'s 2-7 above. Rather than allow Plaintiff access to a Glucometer and Insulin at AM & PM Diabetic Line, Hoey said he would review BEMR more closely and "check" to see if Plaintiff had actually attended AM & PM Diabetic Line previously at MDC Brooklyn and FCI Estill. Hoey also stated that, because Plaintiff's Consult with an Ophthalmologist at his previous facility had been cancelled, he would reschedule a Consult with an Ophthalmologist at FCI Williamsburg "to get a handle on the situation" -- _especially considering that Plaintiff has Glaucoma and Hypertension in Combination with Type II Diabetes, and blindness can occur if the Diabetes is not properly managed._ However, CD Hoey _FAILED_ to set a Consult with an Ophthalmologist -- _AND FOR MORE THAN_ _THREE YEARS IN BOP CUSTODY WITH DIABETES & GLAUCOMA,_ _PLAINTIFF HAS NEVER BEEN EXAMINED BY A SPECIALIST._

13.    Plaintiff's next and _ONLY_ encounter with CD Hoey occurred a year later, on November 5, 2021, where Plaintiff explained that he had _NEVER_ been seen by the Ophthalmologist, had not had access to a Glucometer or Insulin in 19 months (with the exception of 45 days from May 21, 2021, through July 3, 2021), and that he had _begged_ and _pleaded_ with multiple Medical Staff for help but no one will assist him in managing his Diabetes. CD Hoey

Init.: RA    06/23/22                    -8-

REFUSED to discuss the matter and, instead, stated that he was "screening" Plaintiff for the MAT-Program.

14.    This was NOT merely a disagreement between Plaintiff and FCI Williamsburg Medical Staff as to his medical treatment. Rather, Plaintiff had been diagnosed with Type II Diabetes, Glaucoma, and Hypertension by BOP Medical Staff. All three conditions MANDATED treatment. Finger pricks twice daily, Insulin & Metformin had been ORDERED and were the normal treatment for Diabetics nationwide -- whether in or out of custody. In fact, Plaintiff had ALWAYS attended AM & PM Diabetic Line in the past; had ALWAYS had access to Insulin to roll back "spikes" in his glucose levels; and had NEVER been denied the ability to manage his Diabetes with a Glucometer and access to Insulin on a sliding scale -- Until he was transferred on April 15, 2020.

15.    The Defendants, ALL OF THEM, knew Type II Diabetes is a serious disease that, left unchecked, can cause coma, blindness, and death. They knew that without proper management Plaintiff would be at risk of serious harm if they continued to ignore his disease or to deny treatment -- AND DID IT ANYWAY -- despite the fact that Plaintiff's BEMR contained two or more entries about the need for "FSBS" (Finger Stick Blood Sugar) checks. They also knew Plaintiff was suffering pain in his eyes & feet and their acts and/or omissions were the cause.

Init.: RA  06/23/22                    -9-

16.    Plaintiff had consulted with and/or explained all the above facts contained in Affs 2 through 7 with PA Harrell, HSA Nolte, AHSA Brown, as well as Nurses Truesdale, Ingersoll, Bunnel, and Borck. He had also explained these facts to MD Dominici while in Medical one day for an appointment. Yet none of them -- all aware of Plaintiff's need for Am & Pm glucose checks & access to Insulin and the serious risks associated with unmanaged Diabetes -- stepped up to the plate to provide access to these medical necessities associated with Type II Diabetes Mellitus.

17.    Any cursory review of Plaintiff's BEMR would lead any Clinical Director, Medical Director, Physcian's Assistant, HSA, AHSA, Pharmasist, or Registered Nurse to believe that Am & Pm glucose checks and access to Insulin would be necessary -- especially considering the notations in Plaintiff's BEMR about daily finger pricks and his diagnosis with Diabetes in combination with Glaucoma & Hypertension. Yet, for MORE THAN a year and a half at FCI Williamsburg, these Defendants sat by passibly while Plaintiff begged & pleaded with EACH AND EVERY ONE OF THEM with complaints of pain & itching behind the eyeballs, sores on his feet, dizziness, nausia, and loss of vision and loss feeling in his lower extremities.

18.    His BEGGING & PLEAS were not limited to in-person encounters at the noon meal, appointments

Init.: RA  06/23/22          -10-

in medical, or at the pharmacy window during pill line and/or Diabetic Line. Rather, Plaintiff sent a series of Electronic Inmate Requests (EIM's) to various departments and individuals inside Medical -- _more than a DOZEN over the course of a YEAR'S TIME_:

-- CD Hoey: One EIM

-- PA Harrell: Eight EIm's

-- HSA Knolte: One EIM

-- AHSA Brown: Two EIm's

-- CDR Brown: One EIM

19.     Out of all these EIMs directed to these Defendants spanning the time period from November 27, 2020, through September 27, 2021, only one Defendant responded to any of them -- PA Harrell. She responded to three out of eight EIM's, yet ALL of them surrounded and addressed Plaintiff's Diabetes, Glaucoma, Hypertension, and/or how NOT having access to AM & PM glucose checks and Insulin was adversely affecting his health.

20.     During an in-person conversation with HSA K. Nolte at the noon meal, she admitted she had received Plaintiff's July 1, 2021, EIM, was aware that he had been attempting to access regularly scheduled AM & PM glucose checks, but that she was NOT going to "get in the middle of It" -- that Plaintiff must have "pissed someone off."

Init.: RA   06/23/22

-11-

21.    During "SHU Rounds" in the Secured Housing Unit on March 29, 2022, Plaintiff asked Defendant Knolte why she and her associates in Medical had treated him so dirty and refused to assist him in managing his Diabetes and other Chronic Diseases, to which she stated: "Listen Mr. Abel, no one owes you anything here, besides, I've got a good attorney."/[1]

22.    During two appointments with PA Harrell, Plaintiff asked her why she cannot compel the Clinical Director or Medical Director to help him access AM & PM glucose checks & Insulin -- as he had at MDC Brooklyn and FCI Estill. She admitted that Plaintiff should have access to both, but she was only following "orders from the top." When Plaintiff said, "look at these sores on my feet ... look at my toes ... I have no feeling in them ... I'm dizzy every morning and I can't read anything any more without squinting," PA Harrell stated: "Abel, my hands are tied."

23.    Plaintiff had spoken personally with AHSA Brown about all the facts contained in ¶¶'s 2 through 7 herein, and had informed her how his unmanaged Diabetes was causing him

---

[1]/ Career Medical "Professionals" in the BOP are fully aware that the Courts & the U.S. Attorney's office, along with the PLRA, are on their side. That's EXACTLY why HSA Knolte & her codefendants treated Plaintiff so dirty.

Init.: RA
06/23/22

-12-

pain behind his eyes, sores on his feet, problems with his vision, and numbness in his legs and feet. Rather than help him, she LIED to Administrative Staff when Plaintiff exposed her incompetence and stated that Plaintiff WAS NOT A DIABETIC.

24. Nurses Truesdale, Ingersoll, Borck, and Bunnell were no better. Having been told all the critical facts set forth at ¶¶'s 2 through 7 herein, and fully aware of how Plaintiff's unmanaged Diabetes was adversely affecting his health, Truesdale confiscated Plaintiff's "Insulin-Line Pass" and threatened to call the Lieutenant if he attempted to attend Diabetic Line to check his glucose. Ingersoll, Borck, and Bunnell not only refused to allow Plaintiff access to Diabetic Line to check his glucose and receive Insulin, they sent him to the Lieutenant's Office on at least two occasions in an attempt to have him placed in CONFINEMENT for attempting to seek medical treatment.

25. Hence, several things are clear: (1) Plaintiff's Diabetes, Glaucoma, and Hypertension are considered "Serious" medical conditions; (2) BOP Medical Officials "diagnosed" Plaintiff with these conditions; (3) Treatment for all three is "mandated" and was ordered and/or prescribed by BOP Medical officials; (4) left unmanaged, Type II Diabetes Mellitus has the

Init.: RA  06/23/22          -13-

potential to cause serious bodily injury, and death, and, in this case (5) because the above-named Defendants -- ALL OF THEM-- have ignored Plaintiff's pleas for medical assistance in managing his Type II Diabetes, he has suffered (A) pain in and behind both eyes, (B) a percentage of loss of vision in both eyes, (C) pain and sores on both feet, and (D) numbness in his feet and legs.

26.     The above-named Defendants -- ALL OF THEM-- were aware that, for 45 days spanning the time period from May 21, 2021, through July 3, 2021, Plaintiff was temporarily allowed access to a Glucometer and Insulin. During that time period, the AM & PM recorded glucose levels PROVE that Plaintiff should have been accessing AM & PM glucose checks all along, as his glucose levels were oftentimes high ( sometime exceeding 250 mg/DL ; and on 35 occasions higher than 140) and required Insulin to reduce them.

27.     Plaintiff's BEMR will show that the BOP and its Medical Officials (1) DIAGNOSED Plaintiff with Type II Diabetes Mellitus, Glaucoma, Hypertension, and other Chronic- Care Conditions that MANDATED treatment -- including AM & PM glucose checks and Insulin-- (2) ORDERED that treatment for Plaintiff's Type II Diabetes Mellitus; yet (3) stopped that treatment absent any medical justification following Plaintiff's April 15, 2020, transfer-- RESULTING IN ALL THE ADVERSE MEDICAL CONDITIONS SET FORTH ABOVE IN ¶ 25.

Init.: RA  06/23/22

-14-

28.    Plaintiff's BEMR will also show, consistent with ¶ 26 above, that the above-named Defendants, Dr. Hoey, and/or Dr. Dominici, and/or HSA Knotte, and/or AHSA Brown, and/or PA Harrell followed an order, directive, and/or prescription that allowed Plaintiff temporary access to a Glucometer and Insulin to manage his Type II Diabetes for 45 days then, on July 3, 2021, STOPPED said access despite the fact that Plaintiff's recorded AM & PM glucose numbers PROVED that he needed continued access to both the Glucometer & Insulin to manage his Type II Diabetes. (See ¶ 26 above).

29.    The above-named Defendants Knew of Plaintiff's DIAGNOSIS with Type II Diabetes; knew that his A1C reading on "occasional" Lab Rep'ts was UNRELIABLE; Knew that close monitoring of his glucose levels & access to Insulin was ORDERED by BOP Medical Officials and MANDATED to properly manage Plaintiff's Type II Diabetes; Knew Plaintiff also suffered from Glaucoma and Primary Hypertension; knew that the three diseases made Plaintiff more vulnerable to serious bodily injury if his Diabetes was not closely monitored and properly managed; yet they STILL CHOSE to knowingly, willingly, voluntarily, and in some aspects INTENTIONALLY prevent Plaintiff from accessing a Glucometer & Insulin for 17 out of the last 19 months. They also knew their acts and/or omissions had and continue to cause loss of vision, pain, and suffering, and did and CONTINUE to do NOTHING! ALL IN VIOLATION OF CLEARLY-ESTABLISHED LAW.

Init.: PH  06/23/22                    -15-

## JURY TRIAL AND DAMAGES DEMAND

30.       Plaintiff demands a jury trial on all issues so triable based on the acts and/or omissions set forth in the above Complaint.

Plaintiff demands monetary damages against each individual Defendant that remains in suit at the time of trial in an amount of not less than $300,000, jointly and severally; $200,000 compensatory, $100,000 punitive

ALL RIGHTS RESERVED

## SWORN COMPLAINT

I, Robert Abel, pursuant to 28 U.S.C. §1746, hereby swear under oath and subject to penalty of perjury that the facts & claims set forth in the foregoing Complaint are true and correct.

Handed to prison
officials for the
purpose of mailing
on June 23, 2022

Respectfully submitted,

Robert Abel

Robert Abel
Fed. Reg. No. 41724-061
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

-16-